IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 20, 2002

## STATE OF TENNESSEE v. ART MAYSE

**Appeal from the Criminal Court for Fentress County**
**No. 7753     E. Shayne Sexton, Judge**

---

**No. M2001-03172-CCA-R3-CD - Filed January 22, 2003**

---

The Defendant, Art Mayse, was convicted by a jury of eleven counts of rape of a child, each a class A felony, and seven counts of aggravated sexual battery, each a class B felony. After a sentencing hearing, he was sentenced as a Range I offender to an effective sentence of fifty years to be served in the Department of Correction. In this appeal as of right, the Defendant challenges: (1) the adequacy of the bill of particulars, (2) the constitutionality of the delay between the commission of the offenses and the disclosure to authorities, (3) the trial court's denial of his request for a change of venue and motion to excuse a juror for cause, and (4) the sufficiency of the evidence. Because the evidence is insufficient to support two of the aggravated sexual battery convictions, those convictions are reversed and dismissed. The remaining convictions are reversed and the case is remanded for a retrial on those charges because the trial court failed to require the State to elect the offenses on which it relied to support the convictions.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Reversed; Remanded

DAVID H. WELLES, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

James D. Purple, Chattanooga, Tennessee, for the appellant, Art Mayse.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William Paul Phillips, District Attorney General; and John G. Galloway, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant, Art Mayse, was charged by the Fentress County Grand Jury in a twenty-count indictment with fifteen counts of rape of a child, Class A felonies, and five counts of aggravated sexual battery, Class B felonies. Two of the counts of aggravated sexual battery were dismissed prior to trial. At the close of the State's case, four counts of child rape were modified to aggravated

sexual battery as a result of the Defendant's motion for a directed verdict. The jury subsequently convicted the Defendant of eleven counts of child rape and seven counts of aggravated sexual battery. The trial court ordered an effective sentence of fifty years. In this appeal as of right, the Defendant raises four primary issues: (1) whether the bill of particulars sufficiently informed the Defendant of the charges against him, (2) whether the delay in time between the commission of the offenses and the disclosure to law enforcement authorities violated the Defendant's right to due process, (3) whether the trial court properly denied the Defendant's request for a change of venue and motion to excuse a juror for cause due to pretrial publicity, and (4) whether the evidence presented at trial was sufficient to support his eighteen convictions for child rape and aggravated sexual battery.

The proof established that the Defendant became the pastor of the Round Mountain Church in 1992. The victim, T.J.,[1] and her family were members of the church at that time. The Defendant lived only three houses from the victim and her family, and the families became close friends. It came to the attention of T.J.'s mother that a teenage boy had been sexually abusing T.J. when she was seven years old. T.J.'s mother decided to discuss the problem with her preacher, the Defendant. The Defendant arranged a meeting between the victim's parents and the parents of the boy. T.J.'s mother testified that the Defendant told her that "ninety-nine percent of children that are molested, that they either become street walkers, whores or prostitutes, and that if [she] would let [the victim] be with him and let him ground her, that maybe she would grow out of it."

Shortly after this the victim began spending a lot of time with the Defendant. She stayed at his house, they sang together, and she helped him do chores. The victim testified that beginning in April of 1993, the Defendant began touching her chest and vagina. At the time, the victim was nine years old. One of the first instances occurred while T.J. was visiting the Defendant's house. She fell asleep on his couch while she was watching television. The Defendant carried T.J. into his bedroom, unfastened her shorts, and placed his hand in her pants. T.J. pretended to be asleep while the Defendant put his fingers into her vagina. Neither T.J. nor the Defendant said anything during the episode. The Defendant again touched the victim at his office at the Round Mountain Church. He had picked her up from school because she was not feeling well, and she fell asleep on the couch in his office. The Defendant shut the door, came over to the couch, put his hand in the victim's pants, and inserted his fingers into her vagina. The Defendant stopped touching T.J. when he heard her grandmother coming up the stairs to his office. T.J. testified that she did not tell her grandmother or anyone else what had happened because she "didn't think anybody would believe [her] because he was the preacher."

T.J. testified that the Defendant touched her again after she had helped him and her family stack firewood. She was riding with the Defendant back to his house to unload the firewood when he stopped the vehicle, unfastened her pants, and began touching her. She pretended to be asleep while he placed his fingers inside her vagina. The victim also described two instances where the Defendant carried her into his garage that he had remodeled into a bedroom after she had been asleep

---

[1]It is the policy of this Court to refer to victims in child sexual abuse cases by their initials.

on his couch.  On each of these two occasions, the Defendant pulled down T.J.'s pants and inserted his fingers into her vagina.  She also testified that there was a time when she was to spend the night at the Defendant's house.  After she fell asleep on the couch, the Defendant carried T.J. into his wife's bedroom while his wife was away.  While they were in his wife's bedroom, the Defendant put his fingers inside the victim's vagina.  Also, T.J. testified that the Defendant touched her once on his couch while his wife was in the kitchen.  T.J. and the Defendant were sitting on his couch watching a movie.  He told his wife to get covers for T.J.  After his wife put the covers over T.J. and went back into the kitchen, the Defendant put his hand down T.J.'s pants and touched her pubic area.  However, the victim testified that on this occasion the Defendant did not penetrate her vagina with his fingers.

The Defendant also touched the victim while he was at her family's house.  He had come to their house to talk to T.J.'s parents, and she was lying on the couch with her head in his lap.  Her family was in the room, but T.J. was lying underneath covers.  The Defendant put his fingers inside her vagina under the covers.  The victim also described an occurrence where she and her mother and brother had been at the Defendant's house.  T.J. was lying on the Defendant's couch, and he put covers over her.  T.J.'s mother and brother then left the Defendant's house, and he placed his fingers inside T.J.'s vagina.

In October of 1994, the Defendant left the Round Mountain Church and became the pastor for the Lighthouse New Beginning Church.  The victim and her family also left Round Mountain and began attending Lighthouse New Beginning.  On one occasion, the heat was not working at the new church.  The victim and her brother accompanied the Defendant to a back room where there was a wood stove.  The Defendant told T.J. and her brother to lie down in that room.  After the victim's brother fell asleep, the Defendant put his fingers inside her vagina.  T.J. also described how she and the Defendant had sung religious songs together.  Often they would practice at the church building.  She testified that on the way home from one of these practices, the Defendant placed his fingers inside her vagina while they were in his truck.  T.J. testified that she never said anything about what the Defendant was doing to her because she "was too scared."

While the Defendant was pastor of the Lighthouse New Beginning Church, he also worked at night cleaning a laundromat.  From time to time, T.J. and her brother would help him.  On the way home from the laundromat, the Defendant told T.J. to lie down and go to sleep.  When she did, he touched her pubic area.  She testified that this happened three times, but that on these occasions, he did not penetrate her vagina with his fingers.

The victim also testified that between worship services, she would sometimes spend Sunday afternoons at the Defendant's house.  On one Sunday afternoon, the victim fell asleep on the Defendant's couch.  The Defendant carried her into his bedroom, where he removed her clothes.  He then placed his fingers inside her vagina.  He explained to T.J. that "he was helping her change clothes for the next service."

T.J. testified that the last time she remembered the Defendant touching her was after she and the Defendant had been to the grocery store. They put the groceries away at his house and went outside to build a snowman. When they came back inside, they drank hot chocolate together. After this, T.J. covered up and went to sleep on the Defendant's couch. The Defendant then placed his fingers inside her vagina.

Around January of 1995, for reasons unrelated to the abuse of T.J., the victim and her family left Lighthouse New Beginning Church and returned to Round Mountain Church. T.J. did not tell anyone about the abuse until March of 1999, approximately four years after the last occurrence. T.J. saw a video at church about girls being sexually abused, and she became very upset. At that point, she told her mother what the Defendant had done to her. When the prosecutor asked why she had not told anyone earlier, she responded, "Because he was the preacher at our church and he was a friend and everybody trusted him and I trusted him, and I didn't think that nobody would believe me."

Tracey Robertson, a family nurse clinical specialist, testified that she performed a pelvic examination on T.J. on March 29, 1999. She discovered that T.J.'s hymen was not intact. She stated that her findings were consistent with the kind of abuse that the victim had alleged. However, she acknowledged that other factors could have caused the condition and that there was no way to know exactly when the damage occurred.

In his defense, the Defendant offered the testimony of his wife, to whom he had been married for thirty-six years. She expressed her disbelief that any of the accusations against her husband were true.[2]

The Defendant first argues that the bill of particulars failed to sufficiently inform him of the charges against him. Rule 7 of the Tennessee Rules of Criminal Procedure provides that upon a defendant's motion, "the court may direct the filing of a bill of particulars so as to adequately identify the offense charged." "The purpose of the bill of particulars is to provide information about the details of the charge when necessary for a defendant to prepare his or her defense, to avoid prejudicial surprise at trial, and to enable the defendant to preserve a plea of double jeopardy." State v. Speck, 944 S.W.2d 598, 600 (Tenn. 1997). "Information that may be required in the bill of particulars includes, but is not limited to, details as to the nature, date, or location of the offense." Id.

The Tennessee Supreme Court has directly addressed the issue of the utilization of a bill of particulars in child sexual abuse cases, in which the victim, and therefore the prosecution, is unable to determine the specific dates on which the alleged abuse occurred. See State v. Byrd, 820 S.W.2d 739, 741-42 (Tenn. 1991). The court noted that when a child is too young to remember exact dates,

---

[2]The Defendant did not testify at trial. We note that the trial took place prior to our supreme court's opinion in Momon v. State, 18 S.W.3d 152 (Tenn. 1999). While the requirements set forth in Momon are not retroactive, the procedures will be applicable at any retrial of the case.

"the child may be able to define the time of the offense by reference to such memorable occasions in a child's life as birthdays, seasonal celebrations and holidays, the beginning or end of the school year, or visitation by relatives." Id. at 742. However, even if the prosecution is unable to offer exact dates or even the approximate time of the alleged offense by means of descriptive reference, "a conviction may nevertheless be affirmed if in the course of the trial it does not appear that the defendant's defense has been hampered by the lack of specificity." Id. We must examine the Defendant's allegations with these strictures in mind.

The Defendant was initially charged with fifteen counts of child rape and five counts of aggravated sexual battery. Two of the aggravated sexual battery counts were dismissed prior to trial. With the exceptions of counts one and two, each of the counts lists the approximate date of the offense as between July of 1992 and February of 1995.[3] The Defendant filed a motion for a bill of particulars requesting information regarding the time and place of each alleged offense. The prosecution responded by filing a bill of particulars. Although the prosecution was largely unable to provide more specific dates, the bill does describe with particularity the location where each of the remaining eighteen counts occurred and the circumstances surrounding each offense. For example, count two was alleged to have occurred in the Defendant's office at the first church he pastored after he picked T.J. up from school, count four was alleged to have occurred in a truck at the Defendant's residence at a time when T.J. was helping the Defendant stack firewood, count ten was alleged to have occurred in a back room of the second church at a time when the heating system was not working, counts eleven through thirteen were alleged to have occurred at a time when T.J. had been helping the Defendant clean the laundromat, and count fifteen was alleged to have occurred at the Defendant's residence after he and T.J. had built a snowman.

The Advisory Commission Comments to Tennessee Rule of Criminal Procedure 7(c) make it clear that a bill of particulars is not to be used by a defendant as a broad discovery device. See also State v. Stephenson, 878 S.W.2d 530, 539 (Tenn. 1994). "The test in passing on a motion for a bill of particulars is whether it is necessary that the defendant have the information sought in order to prepare his defense and to avoid prejudicial surprise." Id. When the prosecutor's bill of particulars is viewed in this light, it is clear that the Defendant was appraised of the charges in such a way that he was able to prepare his defense and avoid unfair surprise at trial. The Defendant knew where the offenses were alleged to have occurred, the circumstances surrounding the offenses, the span of time in which they allegedly occurred, and the nature of the sexual contact alleged by the victim. The Defendant has failed to show how his defense would have been different had he known the exact dates of the alleged offenses. In other words, the Defendant has failed to show that he suffered prejudice because of the lack of specific dates. Therefore, this issue is without merit.

The Defendant also argues that his right to due process was violated by the approximate four-year delay between the time of the offenses and the disclosure by the victim. The Defendant relies upon cases that concern the fresh complaint doctrine. His reliance is misplaced. The fresh

---

[3]Count one lists the date as between July 1992 and September 1993; count two lists the date as between July 1992 and October 1994.

complaint doctrine traditionally "allowed a victims's out-of-court statements regarding a sexual offense to be introduced at trial to corroborate the victim's in-court testimony." State v. Speck, 944 S.W.2d 598, 601 (Tenn. 1997) (citations omitted). However, in the instant case, there is no out-of-court statement at issue. The issue is whether the delay in time between the occurrence of the offenses and the victim's disclosure of the offenses deprived the Defendant of his right to due process.

A delay between the time of the offense and the time of formal accusation "may occur in such a manner that the defendant's Fifth Amendment right to due process . . . is violated." State v. Baker, 614 S.W.2d 352, 354 (Tenn. 1981); see also U.S. v. Lovasco, 431 U.S. 783, 789, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977); State v. Gray, 917 S.W.2d 668, 671 (Tenn. 1996). "In determining whether pre-accusatorial delay violates due process, the trial court must consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused." Gray, 917 S.W.2d at 673. In this case, the Defendant has failed to show that the four-year delay was not for a legitimate reason. He has also failed to demonstrate prejudice. With respect to the requirement that the Defendant show prejudice, he has failed to demonstrate that but for the delay the outcome of the case would have been different or even that his defense would have been different. Furthermore, he has failed to demonstrate that the delay was the product of malevolence on the part of the prosecution or the victim. When the victim was asked on direct examination why she delayed in disclosing the criminal activity, T.J. replied, "[b]ecause he was the preacher at our church and he was a friend and everybody trusted him and I trusted him, and I didn't think that nobody would believe me." T.J. finally told what the Defendant had done to her after she watched a video at church about the sexual abuse of young girls. The video upset T.J., and she told her mother what had gone on years before. This Court has considered several instances in which a video or television program causes children to come forward and disclose the fact that they have been sexually abused. See State v. John Farmer, No. 88-282-III, 1989 Tenn. Crim. App. LEXIS 798, at *3 (Nashville, Nov. 17, 1989) (victim disclosed sexual abuse by her father after she viewed sitcom encouraging children to report instances of sexual abuse); State v. Glen D. Alcorn, No. 88-195-III, 1989 Tenn. Crim. App. LEXIS 452, at *4 (Nashville, June 7, 1989) (victim reported abuse to her mother after watching a children's television program dealing with the subject of child sexual abuse); State v. Dennis Richard Carr, No. 88-49-III, 1988 Tenn. Crim. App. LEXIS 667, at *2 (Nashville, Nov. 1, 1988) (victim reported sexual abuse after watching a film at school). The Defendant has failed to show that the delay in this case was the product of improper motives. For that reason and because he failed to show any prejudice caused by the delay, we cannot conclude that the approximate four-year time span between the alleged acts and the filing of charges violated the Defendant's due process rights.

Next, the Defendant contends that the trial court erred by denying his requests for a change of venue and to excuse for cause a juror who had been exposed to pretrial publicity regarding the Defendant. The decision of whether to grant a request for a change of venue is left to the sound discretion of the trial court and will not be reversed on appeal absent an affirmative and clear abuse of that discretion. See State v. Vann, 976 S.W.2d 93, 114 (Tenn. 1998); State v. Bates, 804 S.W.2d 868, 877 (Tenn. 1991). Furthermore, the Defendant must demonstrate that the jurors were biased or prejudiced against him before his convictions will be overturned on appeal. See State v. Melson,

638 S.W.2d 342, 361 (Tenn. 1982). "The test is whether the jurors who actually sat and rendered verdicts were prejudiced by the pretrial publicity." State v. Crenshaw, 64 S.W.3d 374, 386 (Tenn. Crim. App. 2001) (citation omitted).

In this case, the Defendant has failed to demonstrate that the jurors who sat on his trial were biased or prejudiced against him as a result of the alleged pretrial publicity. The record contains no evidence of any particular pretrial publicity. The only references to pretrial publicity are in the Defendant's motion for a change of venue and in his brief. There is no evidence in the record regarding the nature of the publicity, its content, the degree to which the publicity permeated the area from which the venire was drawn, or the time lapse between the publicity and trial. See State v. Hoover, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1980) (listing factors to be considered regarding a request for a change of venue). "In the absence of a complete record, we must presume that the trial court correctly denied the motion for a change of venue." Crenshaw, 64 S.W.3d at 387. Accordingly, this issue is without merit.

Likewise, we find no reversible error as a result of the trial court's decision to not excuse for cause a juror named Mr. Upchurch, who allegedly had heard from someone at work that "there had been a case against [the Defendant] somewhere else." The details regarding the type of case, the final outcome, and when it had occurred were not disclosed. After the Defendant challenged the juror for cause based upon the workplace conversation, the following colloquy took place:

| | |
|---|---|
| The Court: | Mr. Upchurch, you say that you heard certain conversations that took place at work. Is that something that may — that makes you unfair or impartial at this — or partial at this time? Do you recall the conversation? Without revealing what you heard, do you recall the substance of that conversation? |
| Juror: | Yes. |
| The Court: | All right. Do you understand that — that what you will hear here in the courtroom is the evidence, to — that — either for or against Mr. Mayse, do you understand that? |
| Juror: | Yes. |
| The Court: | And the courtroom — the public opinion is not the place that that is to be tried, is that right? |
| Juror: | Yes. |
| The Court: | Are you saying that you can exclude what you have heard at your work place? |
| Juror: | Yes. |
| The Court: | And listen to the evidence that you hear in the courtroom, and listen to the legal instructions that I will give at the conclusion of the trial, and return a fair and impartial verdict solely on that? |
| Juror: | Yes, sir. |

The Court:    Without any regard to what you heard?  When I say — "without any regard to what you have heard at work[,]" what you have just alluded to?

Juror:    Yes.

The Court:    Deny your request.

There is no evidence that any of the jurors who actually heard and decided the case, including Mr. Upchurch, were unfair or partial.

> Jurors need not be totally ignorant of the facts or the subject matter of the case on which they sit.  Even the formation of an opinion on the merits will not disqualify a juror if she can lay aside her opinion and render a verdict based on the evidence presented in court.

State v. Humphreys, 70 S.W.3d 752, 765-66 (Tenn. Crim. App. 2001).  The decision of whether to excuse a juror for cause is subject to an abuse of discretion standard of appellate review.  See State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989).  There has been no such abuse of discretion in this case, and this issue is, therefore, without merit.

Finally, the Defendant argues that the evidence was insufficient to support his convictions for child rape and aggravated sexual battery.  Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."  Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000).  In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient.  See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom."  Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279.  The court may not "re-weigh or re-evaluate the evidence" in the record below.  Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105.  Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment.  See Tuggle, 639 S.W.2d at 914.  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts.  See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

In this case, the Defendant was convicted of eleven counts of child rape and seven counts of aggravated sexual battery. "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). Sexual penetration is defined in pertinent part as any intrusion, however slight, of any part of a person's body into the genital or anal openings of the victim. See Tenn. Code Ann. § 39-13-501(7). "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant" where the victim is less than thirteen years old. Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6).

The Defendant argues that the testimony of T.J., which was the only direct evidence offered by the prosecution that the Defendant did commit the offenses, was insufficient to support his convictions for child rape and aggravated sexual battery. He argues that because the testimony of T.J. was uncorroborated, because she did not resist or seek help, and because she waited approximately four years before disclosing the offenses, her testimony was not credible. As we have already stated, appellate courts do not resolve issues regarding the credibility of witnesses. See Morris, 24 S.W.3d at 795. Obviously the jury credited the testimony of T.J. and convicted the Defendant of child rape and aggravated sexual battery. This Court may not re-weigh the evidence relied upon by the jury. See Evans, 838 S.W.2d at 191. Rather we are constrained to determine whether, in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. at 319.

We must conclude that the record before us does not support all of the Defendant's convictions. From our review of the evidence, it appears that T.J. testified to only four instances of aggravated sexual battery. With respect to the other three counts, it appears that the following colloquy formed the basis for the convictions:

Prosecutor: Of course, you have told us about incidences where he touched you but didn't actually put his fingers inside of you. Were there any incidences — other incidences at his house where he did that during this period of time?

T.J.: Not that I can remember. It was lots of times that it was in the living room.

Prosecutor: At his house?

T.J.: Yes.

Prosecutor: You can't remember any specific details?

T.J.: No.

Prosecutor: Is that what you are saying?

T.J.: Yes.

| | |
|---|---|
| Prosecutor: | Okay. Was there a first time that it happened there — whenever that was — |
| T.J.: | Yes, it was — |
| Prosecutor: | And how many times did that happen, where he just touched you at his house? |
| T.J.: | About three or four times. |
| Prosecutor: | Now, where did that normally occur at? |
| T.J.: | On the couch in the living room. |

This testimony is insufficient to support a finding beyond a reasonable doubt that on three distinct and separate occasions the Defendant committed aggravated sexual battery against T.J. However, as addressed later in this opinion, the victim testified to one occurrence of child rape in addition to the eleven that were charged. This testimony could support a conviction for aggravated sexual battery. As for the other two battery convictions, there is not sufficient evidence in the record to support them. Therefore, two of the convictions for aggravated sexual battery must be reversed and dismissed.

Related to the sufficiency of the evidence is another argument advanced by the Defendant in his brief but not distinctly presented as a separate issue for our review. In his arguments regarding the bill of particulars and the sufficiency of the evidence, the Defendant discusses his right to a unanimous jury verdict and the failure of the State to elect offenses. The right to jury unanimity requires that the jury be unanimous as to the specific act which the defendant committed upon which their judgment rests. See State v. Hodge, 989 S.W.2d 717, 720 (Tenn. Crim. App. 1998); State v. Brown, 823 S.W.2d 576, 582 (Tenn. Crim. App. 1991). A trial court has the duty of requiring the State to elect the particular act upon which it relies for conviction and to instruct the jury so that the verdict of all jurors will be united as to one offense. See Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). As our supreme court has reiterated,

> the prosecution must elect the facts upon which it is relying to establish the charged offense if evidence is introduced at trial indicating that the defendant has committed multiple offenses against the victim. The election requirement safeguards the defendant's state constitutional right to a unanimous jury verdict by ensuring that jurors deliberate and render a verdict based on the same evidence.

State v. Johnson, 53 S.W.3d 628, 630-31 (Tenn. 2001). When the State presents proof on many offenses within an alleged time period, but neglects election, the jury is improperly allowed to "reach into the brimming bag of offenses and pull out one for each count." Tidwell v. State, 922 S.W.2d 497, 501 (Tenn. 1996). From our thorough review of the record, it appears that because the State failed to elect offenses, the risk of a "patchwork verdict" existed that demands our attention. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). Failure of the State to elect offenses when the proof requires an election is plain error. See State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997). "Moreover, absent an election, an appellate court reviewing the legal sufficiency of the evidence can hardly be confident that it has discharged its function properly." Tidwell, 922 S.W.2d at 501.

As we have already noted, the Defendant was initially charged with fifteen counts of child rape and five counts of aggravated sexual battery. Two of the aggravated sexual battery counts were dismissed prior to trial. Therefore, the prosecution's bill of particulars contained a total of eighteen counts. However, after the State rested its case at trial, four of the counts of rape were reduced, upon the Defendant's motion, to aggravated sexual battery. The Defendant was convicted on all counts as charged: eleven counts of child rape and seven counts of aggravated sexual battery. However, based on our review of the record, the victim testified to twelve instances of child rape and only four instances of sexual abuse without penetration. To further complicate and confuse the matter, as the prosecutor summarized the testimony of T.J. for the jury during closing argument, he recounted thirteen instances of rape, seven of aggravated sexual battery, and one occurrence that he did not classify as either rape or battery. This litany by the prosecutor in which he reminded the jury of the victim's testimony is the only portion of the record that resembles an attempt at election, and it clearly does not guard against a verdict that is not unanimous. Furthermore, the jury instructions did not inform the jury of the State's duty to elect or connect the eighteen counts charged with any particular sexual conduct.

> There should be no question that the unanimity of twelve jurors is required in criminal cases under our state constitution. A defendant's right to a unanimous jury before conviction requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a "patchwork verdict" based on different offenses in evidence.

State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001) (citations omitted).

While it is apparent from our review of the record that the State was aware of its duty to elect, at no time did the trial court take precautions to ensure that the jury deliberated over particular offenses for each count rather than creating a patchwork verdict. We find nothing in the record to indicate that the jury was made aware of the bill of particulars in which the State attempted to narrow the circumstances of each count. The trial judge instructed the jury that the Defendant was charged with eleven counts of rape of a child and seven counts of aggravated sexual battery. He then instructed on the elements of these two crimes. There was no instruction concerning the election of the facts upon which the State relied to support the offense charged in each count of the indictment.

We are unable to conclude that the failure to elect with respect to the eleven charged counts of child rape or the seven charged counts of aggravated sexual battery was harmless beyond a reasonable doubt. By our count, the victim testified to twelve instances of rape, and the prosecutor mentioned thirteen during closing argument. There was no testimony as to two of the counts of aggravated sexual battery, but the jury convicted the Defendant of all seven. We cannot be certain that all the jurors were deliberating on the same occurrences. See Tidwell, 922 S.W.2d at 501. Obviously, the jury believed that the Defendant raped T.J. on numerous occasions. However, we simply cannot allow the "patchwork" theory of justice that our supreme court has rejected. There must be a unanimous jury verdict on each of the eleven counts of child rape. Accordingly, we must

-11-

reverse the Defendant's eleven convictions for rape of a child and the remaining five convictions for aggravated sexual battery and remand these charges for a new trial.

The result of cases such as this is all the more unfortunate because it is easily preventable. The appellate courts have repeatedly held that the State must elect between multiple offenses and have repeatedly emphasized that trial judges must ensure that election is properly made. See State v. Brown, 992 S.W.2d 389 (Tenn. 1999); State v. Walton, 958 S.W.2d 724 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497 (Tenn. 1997); State v. Shelton, 851 S.W.2d 134 (Tenn. 1993); State v. Brown, 762 S.W.2d 135 (Tenn. 1988). "As our cases have made crystal clear, the prosecution's failure to elect was an error that was 'fundamental, immediately touching [upon] the constitutional rights of [the] accused.'" State v. Kendrick, 38 S.W.3d 566, 569 (Tenn. 2001) (quoting Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973)). It has been almost three full decades since Burlison was decided.

The two convictions for aggravated sexual battery for which there was insufficient evidence are reversed and dismissed. The eleven convictions for child rape and the remaining five convictions for aggravated sexual battery are reversed, and the charges are remanded for retrial on those charges.

The Defendant has raised no issue regarding lesser included offenses. We note from the record that the trial court charged the jury with no lesser included offenses to the charges in the indictment. Failure of the trial court to charge a lesser included offense may be plain error. See State v. Williams, 977 S.W.2d 101, 110 n.6 (Tenn. 1998). Because we have concluded that all the Defendant's convictions must be reversed because of the failure to elect offenses, we see no need to analyze or address in detail the issue of lesser included offenses. We point out, however, that a trial judge at the time this case was tried had the obligation to charge lesser included offenses when warranted even in the absence of a request by the Defendant. See State v. Langford, 994 S.W.2d 126, 128 (Tenn. 1999). At the retrial of this case, the trial judge and the attorneys must give some thought to and address the issue of lesser included offenses as it relates to the evidence presented at retrial. See State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999); State v. Elkins, 83 S.W.3d 706 (Tenn. 2002); State v. Allen, 69 S.W.3d 181 (Tenn. 2002); State v. Ely, 48 S.W.3d 710 (Tenn. 2001); State v. Swindle, 30 S.W.3d 289 (Tenn. 2000); State v. Dominy, 6 S.W.3d 472 (Tenn. 1999); State v. Steven Lee Whitehead, No. W2002-00484-CCA-RM-CD, 2002 Tenn. Crim. App. LEXIS 543 (Jackson, June 27, 2002).

Accordingly, the judgment of the trial court is reversed. This case is remanded for a new trial.

_____
DAVID H. WELLES, JUDGE