**STATE of Tennessee, Appellee,**

v.

**Charles HOOVER, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 4, 1979.

Permission to Appeal Denied by Supreme Court Feb. 19, 1980.

R. Bruce Ray, Jamestown, for appellant.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, John M. Roberts, Dist. Atty. Gen., Livingston, Laken Mitchell, Asst. Dist. Atty. Gen., Cookeville, Marsha L. K. Selecman, Asst. Dist. Atty. Gen., Crossville, for appellee.

## OPINION

SCOTT, Judge.

The appellant, indicted for the first degree murder of his cousin, Anthony Brewer, was found guilty of murder in the second degree and sentenced to twenty-five years in the state penitentiary. In his appeal, which was filed before the new Tennessee Rules of Appellate Procedure became effective, he assigned three errors. Since none relate to the convicting evidence, we will not detail the circumstances of the offenses nor the appellant's self defense allegation.

One assignment of error, that the court failed to excuse for cause a certain venireman, was not presented to the trial judge in the motion for a new trial and cannot be considered on appeal. Rule 14(5), Tennessee Supreme Court Rules, adopted as a rule of this Court on July 6, 1967; Rule 3(e), Tennessee Rules of Appellate Procedure.

Another assignment of error, that the court failed to grant the motion for a new trial, is a conclusory one and will be implicitly considered.

The assignment of error which can be considered is that the court erred by failing to grant the motion for a change of venue.

The appellant, while out on bond awaiting the trial in this case, was charged with another first degree murder and was bound over to the Cumberland County Grand Jury on August 25, 1978. It was alleged in the motion that there was undue excitement and prejudice in the community against the appellant; that he was a topic of conversation throughout the county; and that he had received great notoriety in the broadcast and print media. For these reasons, he alleged that he could not obtain a fair trial in Cumberland County and sought to change the venue.

In support of his motion, the appellant presented three witnesses. Mr. Bob Fowler, the Executive Editor of the *Crossville Chronicle*, and a stringer for *The Nashville Tennessean* and the *Knoxville News Sentinel*, testified that Cumberland County has an estimated population of more than 25,000, and that the official 1970 census showed a population of 20,000. News is presented locally by two newspapers, two radio stations, and a television station. His knowledge of what was carried in the press was limited to his own paper and those for whom he strung. The newspaper which he edits has a circulation approaching 6,000. He exhibited the August 22, 1978 edition of his paper with the headline, "Hoover Faces Second Murder Charge" printed above the masthead. The story related that the appellant was charged with an August 19, 1978 murder and recounted the fact that he was also charged in this case. *The Tennessean*, which circulates in Cumberland County, also carried an article he submitted concerning the homicides.

On cross-examination Mr. Fowler testified that there were thousands of people in the county who had never heard of the defendant, and that, as much as he wished it were not so, there were many people in the county who did not read his paper.

Mr. Dale Elmore, who was sheriff of the county at the time of both homicides, testified that he heard a lot of conversation about the cases. However, on cross-examination he admitted that most of the people talking about these matters were visitors to the County Jail or involved in law enforcement. He stated that the defendant was not very prominent in the county and that he believed that an impartial jury could be impaneled.

Finally, Mr. Buddy Lewis, a deputy sheriff who investigated both incidents, testified that there should be no problem getting an impartial jury.

At the conclusion of the hearing on the motion, the trial judge took the matter under advisement and withheld ruling until the completion of the voir dire examination of the prospective jurors.

At the trial which began on November 14, 1978, the voir dire was conducted with complete sequestration. Veniremen were excluded from the courtroom during the examination. Each prospective juror was questioned individually. Those selected for the jury panel were immediately sequestered. The trial judge conducted an extensive examination of each prospective juror, asking appropriate questions concerning their qualifications to serve in this case. Each prospective juror was questioned at length by the state's counsel and defense counsel. There was strict compliance with Rule 24, Tenn.R.Cr.Proc.

Forty-five prospective jurors were examined in order to seat the jury panel. Four were examined to seat an alternate. In the process of selecting the twelve, the defendant exhausted his fifteen peremptory challenges. The state used two. The court excused fourteen jurors *sua sponte* without challenge for various reasons, and two were excused by the court following challenges for cause. Defense counsel challenged one venireman for cause and the challenge was disallowed.

Of the members of the jury panel, seven had read or probably read about the first murder only. Two members had knowledge of the second murder as well as the first, and three knew nothing of either. One of the members of the panel was a distant

relative of the appellant. Three members testified equivocally that they don't believe everything they read in the newspaper. All members with knowledge of one or both offenses testified that they could decide the case entirely on the evidence presented in the courtroom without reference to what they had read. No juror who actually sat was challenged for cause.

The opinion of the trial judge concerning the legal necessity for a change of venue may be reversed, but a strong case of error must appear in the facts before an appellate court could feel authorized to reverse his judgment and opinion in such a matter, for it is so difficult to present in a bill of exceptions all the facts and circumstances on which the opinion may rest. *Ellick v. State*, 31 Tenn. (1 Swan) 325, 327 (1851). More recently, Mr. Justice Henry of the Tennessee Supreme Court stated it differently. The matter of a change of venue addresses itself to the sound judicial discretion of the trial judge and his decision must be respected absent an affirmative and clear abuse of that discretion. *Rippy v. State*, 550 S.W.2d 636, 638 (1977), citing *Wheeler v. State*, 220 Tenn. 155, 415 S.W.2d 121 (1967).

A very thorough annotation of the matter of pre-trial publicity as a ground for a change of venue is found in 33 A.L.R.3d 1. Relevant factors to be considered in determining whether to grant a change of venue are:

1. Nature, extent, and timing of pre-trial publicity.
2. Nature of publicity as fair or inflammatory.
3. The particular content of the publicity.
4. The degree to which the publicity complained of has permeated the area from which the venire is drawn.
5. The degree to which the publicity circulated outside the area from which the venire is drawn.
6. The time elapsed from the release of the publicity until the trial.
7. The degree of care exercised in the selection of the jury.
8. The ease or difficulty in selecting the jury.
9. The veniremen's familiarity with the publicity and its effect, if any, upon them as shown through their answers on voir dire.
10. The defendant's utilization of his preemptory challenges.
11. The defendant's utilization of challenges for cause.
12. The participation by police or by prosecution in the release of publicity.
13. The severity of the offense charged.
14. The absence or presence of threats, demonstrations or other hostility against the defendant.
15. Size of the area from which the venire is drawn.
16. Affidavits, hearsay or opinion testimony of witnesses.
17. Nature of the verdict returned by the trial jury.

In reviewing the record, we have applied these factors to the proof. The trial judge carefully and meticulously orchestrated the jury selection process to insure that the appellant received a fair trial. There is not the slightest hint of an abuse of his judicial discretion in refusing the change of venue.

The judgment is affirmed.

O'BRIEN and CORNELIUS, JJ., concur.