IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 29, 2011 Session

**STATE OF TENNESSEE v. DAVIS BRADLEY WALDROUP, JR.**

**Appeal from the Criminal Court for Polk County**
**No. 08-101   Carroll L. Ross, Judge**

_____

**No.  E2010-01906-CCA-R3-CD - Filed October 20, 2011**

_____

The Polk County Grand Jury indicted Appellant, Davis Bradley Waldroup, Jr.,for two counts of especially aggravated kidnapping, one count of first degree murder, and one count of attempted first degree murder.  These charges stemmed from an altercation Appellant had with his wife and her best friend at his trailer on Kimsey Mountain.  A jury convicted Appellant of one count each of aggravated kidnapping, especially aggravated kidnapping, voluntary manslaughter, and attempted second degree murder.  The trial court sentenced Appellant to an effective sentence of thirty-two years.  On appeal, Appellant argues that the evidence was insufficient to support his conviction of aggravated kidnapping, that the trial court erred in denying his motion for change of venue, erred in allowing the introduction into evidence of a photograph of one of the victim's injuries, and erred in denying his motion for judgment of acquittal.  After a thorough review of the record on appeal, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are**
**Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined.  J. C. MCLIN, J., mortuus.

Shari Tayloe Young, Cleveland, Tennesse, for the appellant, Davis Bradley Waldroup, Jr..

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Steven Bebb, District Attorney General, and Drew Robinson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Appellant and one of the victims, Penny Waldroup, had been married for several years. By October 2006, their relationship had become strained. On October 13, 2006, Appellant was staying in his trailer on Kimsey Mountain in Polk County. That day, Mrs. Waldroup brought their children to visit Appellant. She took her friend Leslie Bradshaw, the other victim, in this case, with her. Before they left for Appellant's trailer, Mrs. Waldroup told a neighbor to call the police if she and Ms. Bradshaw had not returned by 7:30 p.m.

When the victims arrived at the cabin, Appellant walked around the trailer to meet them. He was carrying a .22 rifle at the time. The children were running in and out of the trailer. The victims began to unload the children's belongings and the groceries they had brought with them.

After they finished unloading the van, Mrs. Waldroup tried to get in the van to leave, but Appellant told her that they needed to talk. Mrs. Waldroup replied that she had to get to work, and they could talk when she returned to pick up the children. Appellant grabbed Mrs. Waldroup's van keys and threw them into the woods. Mrs. Waldroup pleaded with Appellant to let her and Ms. Bradshaw leave. Appellant, while in possession of the rifle, began to verbally abuse Mrs. Waldroup and Ms. Bradshaw. Mrs. Waldroup was sitting in the driver's seat and Ms. Bradshaw was standing near the passenger-side door. Appellant was standing by the driver's side of the van. Appellant began to yell at Ms. Bradshaw and blamed her for the demise of his marriage to Mrs. Waldroup.

Appellant, while standing by the driver's side door, raised the rifle and began to fire. Mrs. Waldroup pushed the butt of the gun up and attempted to escape behind the passenger-side seat and out of the rear, sliding van door. Mrs. Waldroup found Ms. Bradshaw lying on the ground. As Appellant continued to fire the rifle, Mrs. Waldroup lingered over Ms. Bradshaw and told her they needed to escape. Ms. Bradshaw did not respond.

As she lingered by Ms. Bradshaw, Mrs. Waldroup realized that Appellant was walking around the van. She left Ms. Bradshaw and attempted to run up the side of the mountain. As she ran up the mountain, Appellant shot her in the back. She fell, and Appellant caught up with her. He pushed her back to the ground on her back and aimed the rifle at her head. Mrs. Waldroup kicked the rifle with her foot, and it slid down the side of the mountain. At that point, Appellant got out a pocketknife and began to cut her with the knife. She was able to get the knife from him and threw it as hard as she could away from Appellant. Appellant and Mrs. Waldroup both got up from the ground and ran. She ran toward the driveway to try

to get to a neighbor's house. The nearest neighbor was a quarter of a mile away. Appellant ran to get a square shovel and began to hit Mrs. Waldroup in the head with it.

The couple's dog began to growl at Appellant and diverted his attention away from Mrs. Waldroup. Mrs. Waldroup was able to run around the trailer in an attempt to escape Appellant. However, Appellant caught up with her and began to hit her with a machete in the back of the head. Mrs. Waldroup turned around and held her arms up to protect herself. She begged Appellant to stop hitting her with the machete, but he hit her several more times. At some point in the attack, Mrs. Waldroup lost her pinkie finger on her left hand. When he stopped hitting Mrs. Waldroup with the machete, he grabbed her by her hair and dragged her over to Ms. Bradshaw's body. He threw Mrs. Waldroup on the ground next to Ms. Bradshaw's body, and he began to kick Ms. Bradshaw's body, as well as hit the body with the machete.

Appellant jerked Mrs. Waldroup up and led her into the trailer where the children were. Mrs. Waldroup asked one of her daughters to bring her some water to drink and a towel in which to wrap her arms. At this point, Mrs. Waldroup was covered in blood. She was also feeling very weak from loss of blood and felt too weak to stand. Her daughter found a sheet which they used to wrap up her arms. At this point, Appellant decided he wanted to have sexual intercourse with Mrs. Waldroup. He told the children to tell Mrs. Waldroup goodbye because that was the last time they would see her. She said goodbye to each of her children and told them that she loved them.

Appellant took Mrs. Waldroup into the bedroom and became upset because she was too messy to have intercourse. He wanted her to shower, but she refused because she did not want to make it easy for him to clean up the blood. She cleaned up some at the sink, and Appellant pulled her shirt off and threw her onto the bed. Appellant had just gotten on top of her when her daughter yelled into the bedroom that she saw headlights in the driveway. Appellant walked into the living room to look out of the window. A police officer was driving up the driveway. Mrs. Waldroup ran out of the front door of the trailer without her shirt or bra and jumped into the back of the police car. When he began to back out of the driveway, she begged him to stay to protect her children.

The officer got out of his car and approached Appellant, who had come out of the trailer. Appellant told the officer that he had killed Ms. Bradshaw and showed the officer her body. After being taken to an ambulance, Mrs. Waldroup was airlifted to Erlanger Medical Center where she remained for at least two weeks. The officer arrested Appellant.

In August 2008, the Polk County Grand Jury indicted Appellant for two counts of especially aggravated kidnapping, one count of first degree murder, and one count of

attempted first degree murder. Following a jury trial, Appellant was convicted of aggravated kidnapping, especially aggravated kidnapping, voluntary manslaughter, and attempted second degree murder. The trial court held a sentencing hearing on May 7, 2009, and sentenced Appellant to an effective sentence of thirty-two years. Appellant filed a timely notice of appeal.

## ANALYSIS

### Denial of Motion for Change of Venue

Prior to trial, Appellant moved for a change of venue. Because Polk County has a relatively small population, the trial court sent out questionnaires to the jury pool regarding knowledge of the case and familiarity with the facts and individuals involved. Subsequently, on July 17, 2008, the trial court held a hearing on the motion. After reviewing the questionnaires, the State conceded that the jury pool should originate outside of Polk County. At the conclusion of the hearing, the trial court determined that the jury venire would be pulled from neighboring Bradley County.

Shortly thereafter, the State dismissed its indictment, and in August 2008, the State filed a superseding indictment. On December 4, 2008, during a hearing in the trial court, Appellant renewed his motion for a change of venue and requested that the venue be moved outside of the Tenth Judicial District. The trial court denied the motion to move the venire outside of the Tenth Judicial District. The trial court concluded that the jury selection would be from neighboring Bradley County.

On appeal, Appellant argues that the trial court erred in denying his motion to move the trial outside of the Tenth Judicial District. The State argues that Appellant has failed to establish that the trial court abused its discretion.

A change of venue may be granted "when a fair trial is unlikely because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a) (2006). A motion for change of venue is left to the sound discretion of the trial court, and the court's ruling will be reversed on appeal only upon a clear showing of an abuse of that discretion. *State v. Howell*, 868 S.W.2d 238, 249 (Tenn. 1993); *State v. Hoover*, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979). The mere fact that jurors have been exposed to pretrial publicity will not warrant a change of venue. *State v. Mann*, 959 S.W.2d 503, 531-32 (Tenn. 1997). Similarly, prejudice will not be presumed on the mere showing of extensive pretrial publicity. *State v. Stapleton*, 638 S.W.2d 850, 856 (Tenn. Crim. App. 1982). In fact, jurors may possess knowledge of the facts of the case and may still be qualified to serve on the panel. *State v. Bates*, 804 S.W.2d 868, 877 (Tenn.

-4-

1991). Before a conviction will be overturned on a venue issue, the appellant must demonstrate on appeal that the jurors were biased or prejudiced against him. *State v. Melson*, 638 S.W.2d 342, 360-61 (Tenn. 1982). The test is whether the jurors who actually sat on the panel and rendered the verdict and sentence were prejudiced. *State v. Kyger*, 787 S.W.2d 13, 18-19 (Tenn. Crim. App. 1989). This Court has quoted the United States Supreme Court and stated the following:

> "[E]xtensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial unconstitutionally unfair," and the court may not presume unfairness based solely upon the quantity of publicity "in the absence of a 'trial atmosphere . . . utterly corrupted by press coverage.'"

*State v. Crenshaw*, 64 S.W.3d 374, 387 (Tenn. Crim. App. 2001) (quoting *Dobbert v. Florida*, 432 U.S. 282, 97 S. Ct. 2290, 2303, 53 L. Ed.2d 344 (1977) (quoting *Murphy v. Florida*, 432 U.S. 282, 303, 97 S. Ct. 2290, 53 L. Ed.2d 344 (1975))). The burden of proof is on the defendant to show that the jurors were biased or prejudiced against him. *Id.* at 394; *see also State v. Blackwell*, 664 S.W.2d 686, 689 (Tenn. 1984); *State v. Garland*, 617 S.W.2d 176, 187 (Tenn. Crim. App. 1981).

We have also stated:

> Furthermore, the scope and extent of voir dire is left to the sound discretion of the trial court. *State v. Smith*, 993 S.W.2d 6, 28 (Tenn. 1999). Jurors who have been exposed to pretrial publicity may sit on the panel if they can demonstrate to the trial court that they can put aside what they have heard and decide the case on the evidence presented at trial. *State v. Gray*, 960 S.W.2d 598, 608 (Tenn. Crim. App. 1997).

*State v. William Glenn Rogers*, No. M2002-01798-CCA-R3-DD, 2004 WL 1462649, at *19 (Tenn. Crim. App., at Nashville, Jun. 30, 2004), *reh'g denied*, (Tenn., Aug. 27, 2004).

Relevant factors to consider in determining whether to grant a motion for a change of venue include: (1) nature, extent, and timing of pre-trial publicity; (2) nature of publicity as fair or inflammatory; (3) the particular content of the publicity; (4) the degree to which the publicity complained of has permeated the area from which the venire is drawn; (5) the degree to which the publicity circulated outside the area from which the venire is drawn; (6) the time elapsed from the release of the publicity until the trial; (7) the degree of care exercised in the selection of the jury; (8) the ease or difficulty in selecting the jury; (9) the veniremen's familiarity with the publicity and its effect, if any, upon them as shown through

their answers on voir dire; (10) the defendant's utilization of his peremptory challenges; (11) the defendant's utilization of his challenges for cause; (12) the participation by police or by prosecution in the release of publicity; (13) the severity of the offense charged; (14) the absence or presence of threats, demonstrations or other hostility against the defendant; (15) size of the area from which the venire is drawn; (16) affidavits, hearsay, or opinion testimony of witnesses; (17) nature of the verdict returned by the trial jury. *Hoover*, 594 S.W.2d at 746.

Again, jurors may sit on a case even if they have formed an opinion assuming the trial court is satisfied that the juror is able to set aside the opinion and render a verdict based upon the evidence presented in court. *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992). Moreover, for there to be a reversal of a conviction based upon a claim that the trial court improperly denied a motion for a change of venue, the "defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him." *State v. Evans*, 838 S.W.2d 185, 192 (Tenn. 1992) (citing *State v. Burton*, 751 S.W.2d 440, 451 (Tenn. Crim. App. 1988)).

However, in the case at hand, the record on appeal does not include a transcript of the jury voir dire. This Court has previously stated:

> The absence of the voir dire in the record prevents us from assessing [the *Hoover*] factors. In the absence of a complete record, we must presume that the trial court correctly denied the motion for a change of venue. *State v. Burton*, 751 S.W.2d 440, 451 (Tenn. Crim. App. 1988) (presuming that the jury was fair and impartial when the defendant failed to include the transcript of voir dire).

*Crenshaw*, 64 S.W.3d at 387. Therefore, Appellant is not entitled to relief on this issue.

**Introduction of Photographs**

Appellant argues that the trial court erred in admitting a photograph depicting Mrs. Waldroup's injuries immediately after the attack. In the photograph, the victim is lying on a gurney with her arms raised to show her defensive wounds from Appellant's attack with the machete. The State argues that the trial court did not abuse its discretion.

As we begin our analysis, we note well-established precedent providing "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). Moreover, the Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both

civil and criminal cases." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., Banks*, 564 S.W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by . . . the danger of unfair prejudice." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951.

Graphic, gruesome, or even horrifying photographs of crime victims may be admitted into evidence if they are relevant to some issues at trial and probative value is not outweighed by their prejudicial effect. *Banks*, 564 S.W.2d at 949–51. On the other hand, "if they are not relevant to prove some part of the prosecution's case, they may not be admitted solely to inflame the jury and prejudice them against the defendant." *Id.* at 951 (citing *Milam v. Commonwealth*, 275 S.W.2d 921 (Ky. 1955)). The decision as to whether such photographs should be admitted is entrusted to the trial court, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *Id.* at 949; *State v. Dickerson*, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993).

The term "undue prejudice" has been defined as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Banks*, 564 S.W.2d at 951 (quoting Fed. R. Evid. 403, advisory committee comments). In *Banks*, the Supreme Court gave the trial courts guidance for determining the admissibility of relevant photographic evidence and determined that a trial court should consider, (1) the accuracy and clarity of the picture and its value as evidence; (2) whether the picture depicts the body as it was found; (3) the adequacy of testimonial evidence in relating the facts to the jury; and (4) the need for the evidence to establish a prima facie case of guilt or to rebut the defendant's contentions. *Id.* at 951.

Prior to trial, the trial court initially held that the prejudicial effect of the photograph in question outweighed its probative value. The trial court informed counsel that the State could revisit the issue during trial. At trial, during Appellant's cross-examination of Mrs. Waldroup, Appellant's counsel asked Mrs. Waldroup whether she had seen Appellant strike her with the machete. While the jury was out of the courtroom, the State argued that the photograph depicting Mrs. Waldroup's injuries was now more probative than prejudicial as a result of the cross-examination. The trial court reversed its earlier decision and allowed the photograph into evidence. The trial court stated the following:

The issue is whether exhibit eight to the motion hearing, photo exhibit is admissible at this point, based on the present testimony. The issue that we just discussed, there was testimony about whether she saw him hit her with the machete. There was some lengthy testimony. It may have become evident at that point that that's not what she heard, but that testimony is before the jury at this point. It was clarified as far as that matter, but again, that is before the jury. Now the, the issue I always have to consider in any photograph is whether the prejudicial value of any photograph outweighs any probative value that it might have. My initial ruling, just on the face of the photograph was at that point the prejudicial value outweighed any probative value it might have, and that the wounds to the witness could be testified to either by herself or by the medical examiner. As I said, anyone can revisit any photograph at any time during the trial. I am going to rule at this point this photograph is admissible. I think at this point its probative value is significant, not only to the point, and I agree to that point. I will allow it in for that reason, but there were other issues raised that I think it's very probative value at this point. There was much made of the fact that she did not say anything to her kids when she ran out of the house. I think the photograph goes to that issue at this point. It goes to her state of mind, of maybe not even being able to think clearly about anything when she's in this kind of a condition. I think it clearly goes to that issue. There was references made by both sides about, "what did you do? Did you just go lean up against the trailer?" something of that nature. There were repeated references to that. I think this clearly shows and is very probative to the issue of why she may have just gone and just leaned up against the trailer because, because of loss of blood or whatever, and she may have at that point been almost at the point of passing out and not having a clear notion of what she was doing. It's clear that anyone in this condition could clearly be disoriented of what they wanted to do, how they wanted to do it, whether or not they should yell at their kids or tell them what to do. So I think for the initial reason stated for the, by the State, I do accept it in for that reason, but for the additional reasons, I think it has been made very probative on any number of issues at this point. And at this time, I will rule it is admissible; that the probative value at this point outweighs any prejudicial value to show the kinds of things that I have just talked about.

We agree with the trial court's decision. We have reviewed the photograph in question and have concluded that the trial court did not abuse its discretion. As stated above, after the cross-examination of Mrs. Waldroup, the photograph became relevant to prove the extent of her injuries. Therefore, its probative value outweighs it prejudicial effect.

Because we have determined that the trial court did not abuse its discretion, this issue is without merit.

## Denial of Motion for Judgment of Acquittal

Appellant argues that the trial court erred in denying his motion for judgment of acquittal at the close of the State's proof. The State argues that the issue is waived because Appellant offered evidence after the denial of his motion.

According to Tennessee Rule of Criminal Procedure 29(b):

On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

This Court has noted that "[i]n dealing with a motion for judgment of acquittal, unlike a motion for a new trial, the trial judge is concerned only with the legal sufficiency of the evidence and not with the weight of the evidence." *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). The standard for reviewing the denial or grant of a motion for judgment of acquittal is analogous to the standard employed when reviewing the sufficiency of the convicting evidence after a conviction has been imposed. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995).

The law of this state is that an appellant waives any error by a trial court in denying a motion for a judgment of acquittal at the conclusion of the State's proof if the appellant goes on to introduce evidence following the denial of his motion. *Finch v. State*, 226 S.W.3d 307, 316-18 (Tenn. 2007); *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn. 1979). At the conclusion of the State's proof, Appellant made a motion for judgment of acquittal. After hearing Appellant's argument, the trial court denied the motion. Appellant proceeded to present witnesses and evidence. For this reason, Appellant has waived this issue with regard to the denial of his motion for judgment of acquittal at the conclusion of the State's proof.

Therefore, this issue is without merit.

## Sufficiency of the Evidence

Appellant argues that the evidence was insufficient to support his conviction for aggravated kidnapping, the charge for which Ms. Bradshaw was the victim. The State argues that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant argues that the evidence is not sufficient to support his conviction of aggravated kidnapping based upon the language contained in the bill of particulars. The bill of particulars stated the following:

> [Appellant] did while armed with a rifle, remove the keys from the ignition of the vehicle of Penny Waldroup in which Leslie Bradshaw was a passenger. That act interfered with the substantial liberty of Leslie Bradshaw. [Appellant] at that time inflicted bodily injuries which resulted in the death of Leslie Bradshaw.

Appellant argues that the State did not present proof to the jury that his taking of the van keys "removed or confined" the victim. He argues that the victim "was moving freely and smoking a cigarette while Appellant and Penny Waldroup argued . . . ."

Aggravated kidnapping is defined in the following manner:

(a) Aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed:
(1) To facilitate the commission of any felony or flight thereafter;
(2) To interfere with the performance of any governmental or political function;
(3) With the intent to inflict serious bodily injury on or to terrorize the victim or another;
(4) Where the victim suffers bodily injury; or
(5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

False imprisonment is defined as, "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a).

The facts in the case sub judice showed that shortly after Appellant and Mrs. Waldroup began to argue, Appellant took the keys out of the ignition of the van and threw them into the woods. Mrs. Waldroup and Ms. Bradshaw were unable to leave Appellant's driveway because they could not start the car. In addition, as alleged in both the indictment and the bill of particulars, Appellant was aiming a gun at the two victims. Mrs. Waldroup testified that she feared for her life and felt like she was not free to leave because she believed that Appellant would shoot her if she attempted to do so. The nearest neighbor, according to the evidence at trial, lived about a quarter of a mile away from Appellant. Therefore, running to a neighboring house for help was not feasible. It is clear from the testimony that Appellant's trailer was located in a remote, rural area. Because the victims had no means of escape from Appellant's property other than on foot and no safe place to go to within walking distance, Appellant's taking of the van keys did substantially interfere with Ms. Bradshaw's liberty.

The statutory elements of aggravated kidnapping do not require a finding that Appellant moved the victim any specific distance or restrained her for any particular length of time in order for Appellant's actions to substantially interfere with the victim's liberty. *See State v. Turner*, 41 S.W.3d 663, 670 (Tenn. Crim. App. 2000) (stating that especially aggravated kidnapping does not require the above-listed elements); *State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997). Based on the evidence presented at trial, we conclude that a reasonable trier of fact could conclude that Appellant confined Ms. Bradshaw so that it substantially interfered with her liberty.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgments of the trial court.


_____
JERRY L. SMITH, JUDGE