FILED

06/28/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2022

## STATE OF TENNESSEE v. JAMAR LAQUAN BRADEN

**Appeal from the Circuit Court for Marshall County**
**No. 19-CR-17      Forest A. Durard, Jr., Judge**

_____

### No. M2021-00764-CCA-R3-CD

_____

The defendant, Jamar Laquan Braden, was convicted by a Marshall County jury of theft of property and unlawful possession of a weapon by a convicted felon for which he received an effective sentence of fifteen years in the Department of Correction. On appeal, the defendant argues: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred in denying his motion for new trial; and (3) the trial court erred in denying his motion for change of venue. Upon our review of the record, the applicable law, and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

Jonathan C. Brown, Fayetteville, Tennessee, for the appellant, Jamar Laquan Braden.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and William Bottoms and Lee Brooks, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

In February 2019, the defendant was indicted for theft of property valued at $1,000 or less and unlawful possession of a weapon by a convicted felon arising out of an

allegation that he stole a dirt bike and that officers recovered a firearm during a search of the defendant's residence.

At trial, Ernest Francis, the owner of the dirt bike, testified that he lived in Lewisburg, Tennessee, at the time of the theft and that his girlfriend, Nancy Gentry, stayed with him several nights a week. However, Mr. Francis did not allow Ms. Gentry access to all areas of and everything in his house. Mr. Francis admitted he was aware Ms. Gentry was using drugs during the time they were together, but he was not aware of the fact that she brought drugs into his home.

Mr. Francis purchased a used 2-cycle green and white Kawasaki dirt bike from a friend for $800 to $1,000 about a year before the theft. He did not receive a title when he purchased the dirt bike, but his friend gave him a receipt reflecting the sale. The dirt bike was covered in green and black monster decals and had the number 172 painted on the side. Mr. Francis kept the dirt bike in a covered lean-to on his property with other recreational and yard equipment. His property was also equipped with security cameras which captured the defendant, who Mr. Francis did not know, pushing the dirt bike away from the property. The security feed of the incident was admitted into evidence and played for the jury. Mr. Francis did not give anyone permission to take the dirt bike, nor did he give Ms. Gentry authority to dispose of his dirt bike or tell the defendant he could take it.

Mr. Francis discovered the dirt bike was missing in November 2018 when his minor son, who had listed the dirt bike for sale online without his permission, brought someone to look at it and it was gone. When the dirt bike was later found, the decals and a fender had been removed.

Detective James Repasky with the Lewisburg Police Department was assigned to the case and developed the defendant as a suspect during the course of his investigation. As a result of his investigation, Detective Repasky went to 803 Second Avenue, an address associated with the defendant and his girlfriend, Destiny Moore. When he arrived, Detective Repasky first encountered Destiny Moore and asked her if there was a dirt bike inside. Ms. Moore directed him to the kitchen, where he found the bike with all of the decals and one of the fenders removed. The removed decals were found in trash cans inside and outside the home.

Detective Repasky obtained two statements from Ms. Moore. The first statement led Detective Repasky to talk to Ms. Moore's brother, Devon King, but Mr. King was ruled out as a suspect. Detective Repasky also reviewed the surveillance videos received from Mr. Francis, which showed an individual arriving in a white car.

Detective Repasky returned to the defendant's house a second time and met with the defendant and Ms. Moore. The defendant agreed to be interviewed with his probation officer, Sandra MaGrill, present. The defendant admitted to taking the dirt bike, claiming Ms. Gentry told him he could get the bike to hold as collateral for a debt she owed. This explanation was contrary to what the defendant had originally told the officer, which was that he had gotten the dirt bike to repair it. Detective Repasky later asked Ms. Gentry if she had given the defendant permission to take the dirt bike, and she told him she had not.

While the defendant was still being recorded, other officers conducted a search of the residence. The video showed Ms. Moore asking the defendant where something was located, and the defendant telling her "[i]n the hallway on the shelf." Detective Repasky noted officers found a loaded gun on the shelf in the hallway.

At some point, Ms. Moore told Detective Repasky she was the only one on the lease to the residence. Ms. Moore, however, was not charged with possession of the gun or of any narcotics found in the house even though she was on the lease. The detective acknowledged he did not ask Ms. Moore whether anyone other than the defendant was staying in the house and did not send the gun off for fingerprint analysis. In response to questioning, Detective Repasky also acknowledged that the gun was small in size and the type of weapon that could fit in the hand of a female.

Devon King, Destiny Moore's brother, testified that Detective Repasky spoke to him in November 2018 concerning a stolen dirt bike. According to Mr. King, someone had alleged that his sister had gotten the bike from him. However, Mr. King testified that he had nothing to do with the dirt bike and that it was never in his possession.

Destiny Moore testified that in November 2018, she, the defendant, and her daughter lived in Lewisburg. While she was the only individual listed on the lease, the defendant lived there the entire time she lived there, and they were boyfriend and girlfriend at the time. Ms. Moore also stated that no other male individuals, family members, or boyfriends lived there during that time.

Ms. Moore recalled giving two statements to Detective Repasky. In the first statement, she told the detective that her younger brother had stolen the dirt bike and brought it to her. Ms. Moore acknowledged that was not the truth but claimed that was the story she and the defendant had discussed. In her second statement, Ms. Moore told the truth – that the defendant had stolen the dirt bike. Ms. Moore said she knew Nancy Gentry and did not consider Ms. Gentry as owing her money, but if Ms. Gentry did owe her money, it was only $25 and not an amount she expected Ms. Gentry to repay. Ms. Moore stated that if her written statement reflected Ms. Gentry allowed the defendant to get the dirt bike from her home to hold as collateral, such would be a false statement.

- 3 -

Ms. Moore remembered officers searching their residence on November 15, 2018, and the defendant speaking to her during the search. According to Ms. Moore, "[o]ne of the times [the defendant] spoke to me he told me to tell the officers that were searching our home where a firearm was at the time, so that is what I did." The defendant told her the gun was located on a shelf in the hallway, and she informed the officers of the same. Ms. Moore did not know where the gun was located until the defendant told her. The gun did not belong to her, and she had never owned a gun, although she was not prohibited from owning one. Ms. Moore also testified that she drove a white Nissan Maxima in November 2018.

Sandra MaGrill, the defendant's probation officer at the time of the offense, testified that the defendant had lived at 803 Second Avenue since he transferred from another county in February 2018. She met with the defendant monthly at the residence from February until November of that year. On an evening in November 2018, she received a call from a detective that the defendant wanted her to be present while he was interviewed. Based on what was said in the interview, Ms. MaGrill determined the residence should be searched, during which a small handgun was found on a shelf in the hallway.

Sergeant Shaun Crawford with the Lewisburg Police Department assisted with the search of the defendant's residence on November 15, 2018. Sergeant Crawford confirmed that the handgun was found on some shelves in the hallway by the bedroom tucked under some items of men's clothing and that Ms. Moore had directed him to the spot where the gun was located.

The parties stipulated that the defendant had previously been convicted of a felony drug offense.

Following the conclusion of the proof, the jury convicted the defendant as charged and, after a sentencing hearing, the trial court imposed an effective term of fifteen years' incarceration.

### *Analysis*

I.      **Sufficiency**

The defendant first challenges the sufficiency of the evidence related to both of his convictions. More specifically, the defendant contends that the State failed to prove he intended to deprive Mr. Francis of the dirt bike and that his "mere presence in Ms. Moore's living room" is not sufficient to support the jury's finding that he was in possession of the firearm. The State insists that it proved every element of the charged offenses beyond a reasonable doubt. Upon our review of the record, we agree with the State.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the

inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property valued at $1,000 or less is a Class A misdemeanor. *Id.* § 39-14-105(a)(1).

The defendant asserts there was insufficient evidence he acted with the requisite intent to establish a theft because he believed he had permission from Ms. Gentry to take the dirt bike as collateral. Additionally, as part of his sufficiency argument, the defendant challenges Ms. Moore's credibility as a witness. However, in the light most favorable to the State, the evidence is sufficient. Mr. Francis testified the dirt bike he bought from a friend for $800-$1,000 was taken from a lean-to behind his house without his permission by the person shown on the surveillance footage. The defendant's girlfriend, Ms. Moore, testified the defendant took the dirt bike, and the defendant admitted as much, although claiming various reasons for doing so. Mr. Francis testified that Ms. Gentry did not have unfettered access to his property or authority to dispose of the dirt bake, and Detective Repasky testified that he asked Ms. Gentry if she had given the defendant permission to take the dirt bike and that she told him she had not. Ms. Moore testified Ms. Gentry did not owe her a debt and did not allow the defendant to get the dirt bike to hold as collateral for a debt she owed them.

The jury heard the defendant's alleged reasons for taking the dirt bike and, as its province, found his excuse incredible, particularly in light of his story changing from having the bike to repair it to holding it as collateral. Along the same lines, any suggestion by the defendant that the State failed to meet its burden of proof due to Ms. Moore's not being a credible witness does not entitle the defendant to relief because credibility determinations are in the province of the jury. Finally, the defendant suggests the evidence is insufficient because the State failed to produce a title or bill of sale for the dirt bike; however, the victim can, and did, testify to the value of the stolen property. *See* Tenn. R. Evid. 701(b) ("A witness may testify to the value of the witness's own property or services.").

In addition, "A person commits an offense who unlawfully possesses a firearm . . . and . . . [h]as been convicted of a felony drug offense." Tenn. Code Ann. § 39-17-1307(b)(1)(B). "Possession may be actual or constructive." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)). Actual

possession "refers to physical control over an item." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014). On the other hand, constructive possession is established when a person has "'the power and intention at a given time to exercise dominion and control over [an object] either directly or through others.'" *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). In other words, "constructive possession is the ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Constructive possession depends on the totality of the circumstances in each case and may be established through circumstantial evidence. *Robinson*, 400 S.W.3d at 534.

The defendant asserts there was insufficient evidence he "possessed" the firearm because there was no evidence linking him to it. He points out that the lease to the residence was solely in Ms. Moore's name and that Ms. Moore was the one who informed the officer of the location of the firearm. However, there was sufficient proof for the jury to determine the defendant constructively possessed the firearm. The firearm was located in the house where the defendant was living – the same place he identified to the probation department as his residence and place he regularly met with his probation officer. According to Ms. Moore, the defendant indicated the location of the gun to her, and that exchange was captured on the footage from an officer's body camera. Officers then found the gun in the exact location as described by the defendant. It was under men's clothing, and the defendant was the only male who lived in the home.

The defendant correlates his case to *State v. Kentrel Ne'Air Siner*, No. W2020-01719-CCA-R3-CD, 2022 WL 252354, at *7 (Tenn. Crim. App. Jan. 27, 2022), in which a panel of this Court determined there was not sufficient evidence the defendant constructively possessed a firearm found under the seat of the car in which he was a passenger. After recounting the factual scenario, the *Kentrel Ne'Air Siner* Court held "there was no evidence linking [the defendant] to the weapon or suggesting that he was aware of its presence in the vehicle." *Id.* However, here, the defendant's nexus to the firearm was greater than that in *Kentrel Ne'Air Siner* and there was certainly evidence suggesting the defendant was aware of the presence of the gun. We conclude, therefore, that there was sufficient evidence from which a reasonable trier of fact could find the defendant constructively possessed the firearm and affirm the jury's verdict.

## II.    Motion for New Trial

The defendant next argues the trial court erred in denying his motion for new trial. However, the defendant's argument in this regard essentially amounts to another challenge to the sufficiency of the evidence in that he recounts the same litany of reasons he alleged the evidence was insufficient. Therefore, our determination in the section above resolves this allegation.

The one new allegation the defendant raises in this section is that the trial court erred in denying his motion for new trial because the sentence he received was excessive. However, the defendant provides no legal authority in support of this assertion. Regardless, the defendant's sentence is within the applicable range, and the trial court fully explained its reasoning on the record in imposing such sentence and is entitled to a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Because, as noted, the defendant has failed to articulate how the trial court abused its discretion and to overcome the presumption of reasonableness afforded to the trial court's decision, we must affirm the decision of the trial court and the sentence imposed.

## III. Change of Venue

The defendant lastly argues the trial court erred in denying his motion for change of venue. The record shows the defendant filed a motion for change of venue on January 8, 2021, and the trial court held a hearing on the motion on April 1, 2021. In his motion and at the hearing, the defendant claimed he could not receive a fair trial in Marshall County because he had no ties to the community; whereas, Destiny Moore, his former girlfriend and anticipated witness for the State, was well-known in the community. The defendant noted that Ms. Moore had been the star of the high school basketball team and had a circle of family members and co-workers who he alleged would not be fair jurors due to his and Ms. Moore's "very toxic" relationship. He also believed he was being stereotyped by the court system in Marshall County due to his race and prior criminal history. The State responded the case had not received any publicity or press, and it believed a fair and impartial jury could be empaneled. On examination by the trial court, the defendant recalled the first time it came to mind that a change of venue might be appropriate was in "the middle or beginning somewhere in like 2019."

Following the conclusion of the proof, the trial court made findings concerning the factors to consider when determining whether a change of venue was appropriate and concluded "there is nothing here to demonstrate a change of venue is necessary." The court also observed a motion for change of venue should be made at the earliest possible date, and the defendant's concerns arose some time ago but he only recently filed the motion.

A trial court may "order a venue change when a fair trial is unlikely because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a). Whether to grant a motion for change of venue is left to the sound discretion of the trial court, and the court's ruling will be reversed on appeal only upon a clear showing of an abuse of that discretion. *State v. Davidson*, 121 S.W.3d 600, 611-12 (Tenn. 2003). A change of venue is not warranted simply because a juror has been exposed to pretrial publicity. *State v. Mann*, 959 S.W.2d 503, 531-32 (Tenn.

1997). For this court to reverse a conviction based on a venue issue, the "defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him." *State v. Evans*, 838 S.W.2d 185, 192 (Tenn. 1992).

In determining whether to grant a change of venue, the trial court should consider the following factors:

the nature, extent, and timing of pretrial publicity; the nature of the publicity as fair or inflammatory; the particular content of the publicity; the degree to which the publicity complained of has permeated the area from which the venire is drawn; the degree to which the publicity circulated outside the area from which the venire is drawn; the time elapsed from the release of the publicity until the trial; the degree of care exercised in the selection of the jury; the ease or difficulty in selecting the jury; the venire persons' familiarity with the publicity and its effect, if any, upon them as shown through their answers on voir dire; the defendant's utilization of his peremptory challenges; the defendant's utilization of challenges for cause; the participation by police or by prosecution in the release of the publicity; the severity of the offense charged; the absence or presence of threats, demonstrations, or other hostility against the defendant; the size of the area from which the venire is drawn; affidavits, hearsay, or opinion testimony of witnesses; and the nature of the verdict returned by the trial jury.

*State v. Sexton*, 368 S.W.3d 371, 387 (Tenn. 2012) ((citing *State v. Rogers*, 188 S.W.3d 593, 621-22 (appendix) (citing *State v. Hoover*, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979))).

The record demonstrates the trial court did not abuse its discretion in denying the defendant's motion. The trial court considered the host of factors relevant to a change of venue determination, and it repeatedly noted "there is no evidence of any publicity." The court also noted the offenses of which the defendant was charged were not particularly severe, consisting of a Class C felony and a misdemeanor. The court observed "a considerable period of time" had passed since the defendant's arrest and that it "would dare to say when we voir dire these jurors there would be few, if any of them, that may have any recollection of this or any knowledge of it whatsoever." The only witness on the issue was the defendant, who made broad conclusions about the district attorney's office being biased against him due to his race and criminal history, as well as members of the community due to the supposed renown of one of the State's witnesses. The defendant has provided nothing more than mere speculation and certainly did not demonstrate that the jurors who actually sat on the jury were biased or prejudiced against him. Accordingly, the defendant is not entitled to relief on this claim.

*Conclusion*

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE