FILED

08/10/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2022

## STATE OF TENNESSEE v. GARY WAYNE PONDER

**Appeal from the Criminal Court for DeKalb County**
**No. 2017-CR-4     Gary McKenzie, Judge**
_____

**No. M2021-00940-CCA-R3-CD**
_____

A DeKalb County jury convicted the Defendant, Gary Wayne Ponder, of aggravated arson. The trial court imposed a twenty-three-year sentence to be served in the Tennessee Department of Correction. On appeal, the Defendant argues that the evidence was insufficient to support his conviction, that the trial court erred when it denied his motion for a change of venue, and that the trial court erred when it sentenced him. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. ROSS DYER, JJ., joined.

Craig P. Fickling, District Public Defender; Allison R. West, Assistant Public Defender, Cookeville, Tennessee, for the appellant, Gary Wayne Ponder.

Herbert H. Slatery III, Attorney General and Reporter; Lindsay Haynes Sisco, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and J. Greg Strong, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's setting fire to the DeKalb County Courthouse. For this event, a DeKalb County grand jury indicted the Defendant for aggravated arson.

### A. Motion for Change of Venue and Voir Dire

Prior to trial, the Defendant filed a motion for a change of venue because the crime for which he was charged had occurred at the location of the trial, the DeKalb County

Courthouse. The trial court reserved ruling on the motion until after the jury had been selected. During voir dire, counsel for the Defendant asked the potential jurors about their attitude towards the Defendant and his crime against county property where they pay taxes. Defense counsel asked the individual jurors whether their judgment would be affected by the fact that the crime had happened at the courthouse. All of the jurors indicated that their judgment would be not affected and affirmed that they would be able to judge the Defendant's case fairly and impartially. A few jurors indicated that they had prior knowledge of what had occurred but stated that they had not come to a prior conclusion about the Defendant's guilt or innocence.

Following the jury empaneling, the Defendant renewed his motion for a change of venue on the basis that the Defendant was being tried for setting fire to the building in which the trial was being held. The Defendant argued that there was "too much of a chance" that the same would weigh on the jury's decision. He argued that the courthouse was central to the life of the local community. The trial court denied the motion, citing the potential jurors' responses during voir dire that their judgment would not be affected by the location of the crime. The trial court stated that all the jurors had indicated their ability to sit in fair and impartial judgment of the case and that they had made their statements under oath. The trial court stated that none of the jurors seemed to have extensive knowledge of the facts of the case and that the empaneled jury appeared to be a "fair jury."

## B. Trial

At the Defendant's trial, the parties presented the following evidence: Timothy Stribling testified that he was the mayor of DeKalb County and was also responsible for the management of county property, including the courthouse building, which contained his office. Mr. Stribling stated that he was inside the courthouse on June 14, 2016, when he heard someone screaming that the building was on fire. Mr. Stribling saw smoke outside his office window, and he announced on the intercom that the building should be evacuated. All the building's occupants got outside safely. The building was damaged in the lower courtroom area by a fire set in a recycling bin in the building that was near the entryway to the building. There was heavy smoke damage throughout the courthouse as well. Mr. Stribling filed insurance claims related to the incident, and the repairs took approximately two months. Mr. Stribling testified that the courthouse had security cameras that were operational on the day of the fire, and he reviewed the video footage.

Jim Judkins testified that he was an attorney practicing in DeKalb County at the time of the fire. He arrived at the courthouse on June 14, 2016, at 2 p.m. and entered the building through a basement door. Inside the basement's vestibule, Mr. Judkins saw a recycling bin with a "bright glow" coming out of it and a male individual, who he later learned was the Defendant, standing next to it. Mr. Judkins identified the Defendant in the courtroom as the man he saw standing near the bin. Mr. Judkins noticed smoke in the vestibule and confirmed that there was a fire in the recycling bin. Mr. Judkins went to the

2

closest office and asked someone to call the fire department. Mr. Judkins went back to the bin at which point the flames were starting to climb the building's walls. Another individual found a fire extinguisher and gave it to Mr. Judkins who attempted to extinguish the fire.

On cross-examination, Mr. Judkins testified that the Defendant looked intoxicated when Mr. Judkins encountered him in the courthouse and that the Defendant was sweating and having difficulty standing up.

Brandon Donnelle testified that he was an officer with the Smithville Police Department when he received a call about the courthouse fire. When he arrived at the courthouse, he observed smoke coming out of the lower level of the building and some of the building's occupants standing outside. Officer Donnelle saw the Defendant standing in the area. He later transported the Defendant to the police station where the Defendant gave a statement that he had put his cigarette out in the recycling bin at the courthouse. Officer Donelle later obtained the security camera video from the courthouse's vestibule area where the fire occurred. The video was played for the jury, which showed the Defendant loitering in the interior vestibule or lobby of the courthouse building. The Defendant stood in front of the recycling bin for a long period of time and appeared to be putting items inside the bin. Suddenly, flames started coming out of the bin and climbing the adjacent wall. Several bystanders can be seen on the video attempting to extinguish the fire or alert the fire department while the Defendant stood by and watched.

On behalf of the Defendant, Mary Frances Smith, the Defendant's mother, testified that she was with the Defendant on June 14, 2016, and that he was "completely disoriented" and not thinking clearly.

Dr. Pamela Auble testified that she was a psychologist who assessed the Defendant prior to trial. Dr. Auble was qualified as an expert in the field of neuropsychology. Prior to her assessment of the Defendant, Dr. Auble was given a video of the incident at the courthouse along with the Defendant's medical records. Dr. Auble interviewed the Defendant and conducted standardized tests to ascertain his mental functioning. She described the Defendant as having low mental functioning coupled with liver disease and abuse of prescription pills. Taken together, these conditions caused the Defendant to be confused often and have episodes when he displayed strange behavior. She identified his condition as a neurocognitive disorder due to brain impairment.

Dr. Auble identified from the Defendant's medical records that he was seen in the emergency department at the hospital on the morning of June 14, 2016. The medical provider there described him as acutely mentally impaired and a drug screen revealed the presence of opioids. The Defendant was diagnosed with opioid intoxication delirium that day, which Dr. Auble described as an acute disturbance in attention, memory, and orientation. Dr. Auble testified that she viewed the video of the incident at the courthouse

and observed the Defendant's behavior, which she described as typical of someone with a severe mental defect. She opined that the Defendant "lacked the capacity to know that he was damaging a structure" because of his mental defect on that day.

Based upon this evidence, the jury convicted the Defendant of aggravated arson.

## C. Sentencing

The trial court held a sentencing hearing, at which the following evidence was presented: Tiffany Campbell testified that she worked for the Tennessee Department of Correction and that she prepared the presentence report which the trial court entered as an exhibit. Ms. Campbell identified that the Defendant had a lengthy criminal history, including convictions for drug use and sale and fraud. The Defendant had been granted probation for several of his convictions and had six violations of his probation terms. Ms. Campbell also identified a prior parole violation.

Timothy Stribling, the DeKalb County Mayor at the time of the incident, testified that there were fifteen people inside the courthouse when the Defendant set fire to the recycling bin in the building. The total damage from the fire was $120,000, and the county was responsible for paying a deductible of $500.

Based on this evidence, the trial court made the following statement:

Well, let me start off by saying that the Court, in making its decision today, is considering the evidence that was received at trial. I was the trial judge at the trial. The Presentence Report, Principles of Sentencing, the argument as to alternatives. And there's not really much on alternative because of the nature of the offense itself. But certainly, there's been some talk about lightening the sentence. The nature and characteristics of the criminal conduct. That's been referred to today. Mitigation and enhancement factors, both have been argued by both sides. The Court is considering those.

. . . .

So it's a Range 1 offense that he -- even though he is technically, yes, we could get into, technically looking at what's been introduced today, he would be a Range 2. But he's a Range 1.

The enhancement factors. So first we'll go through those. The [S]tate has argued here today for enhancement factors. And whenever I look at those enhancement factors, let's see, the state is relying on Number 1, "The defendant has a previous history of criminal convictions or criminal behavior

4

in addition to those necessary to establish the appropriate range." He does, and I apply. That applies. And I place great weight on that factor. That factor is a factor that alone would enhance the [D]efendant's conviction substantially. Because the [S]tate has introduced, and there are exhibits, we have three, I'm going to say there's more than three prior felony convictions, but they have introduced, from a date perspective, three prior felony offenses. And then the Collective Exhibit Number 2 is numerous "D's" and "E" felonies, but all have the same date on them. So, three. And two being class "C" felonies. Exhibits 1 and 3 are class "C" felonies, and that would enhance him to a Range 2. So, those clearly establish Number 1.

Number 2, or the second I should say, enhancement factor that the [S]tate gives is Number 6, "Personal injuries inflicted upon or the amount of damage to the property sustained by or taken from the victim is particularly great." And so the damage to the county was a hundred and twenty thousand dollars ($120,000.00). And even though there's a five hundred dollar ($500.00) deductible, the [S]tate's right, that's a hundred and twenty thousand dollars ($120,000.00) worth of real damage. A hundred and twenty thousand ($120,000.00) was paid by an insurance company. That's real money. Things happen when insurance claims are being paid out. Certainly, your premiums go up the more claims, and so that's a real figure, regardless of who pays it. And that's a high figure. A hundred and twenty thousand dollars ($120,000.00) is high to this Court. That's a lot of money. So I apply that one. So I find that enhancement factor.

. . . .

Number 10, "The defendant had no hesitation about committing a crime where the risk to human life was high." And so, I think that's been established. I think it was established that there were fifteen people in the building, and the fire began to burn up the side of, if I recall at trial, began to burn up the side of the wall. And but for quick response, it could have easily gotten out of control. And I think the risk to life, especially any individual on the second floor of the building, I think the risk to human life was high, smoke, many many different things. But I do understand that it didn't proceed to the point where it was, and I consider that in applying the factors. So, I place some, some weight on that. . . . I'm going to find it, but I don't place a significant amount of weight on Factor Number 10.

And so, Number 1, the first factor alone, gets the Court to a twenty-five (25) year sentence. And then the property loss, Number 6, certainly does as well. So, I'm going to set a twenty-five (25) year sentence, but then we've

5

got to come over to the other side. So, I'm setting a twenty-five (25) year sentence on the factors that the [S]tate has suggested.

So then we go to the mitigation factors. . . . But two things that the defense argues is, one, that he was out on bond for some period of time and didn't commit new crimes. However, I mean, his criminal history and his violations of probation speak for themselves, but he did go a period of time without any criminal behavior, and so I'll give the defendant some credit for that. And then there was some testimony, there were health issues, which is what led to his bond to begin with, his health issues. And there is, I understand him to be 56 years old, by the report, and this is a, basically a hundred percent (100%) sentence that can be reduced by fifteen (15), depending on good time behavior, it could be reduced by fifteen percent (15%). So, I'm going to reduce his sentence from twenty-five (25) down to twenty-three (23).

So I'm going to implement a twenty-three (23) year sentence on the [D]efendant. You know, he's 56, and in twenty-three (23) years, we're knocking on the door of 80, and considering the crime and the arguments that have been made here, I'm going to set it at twenty-three (23) years. So it will be a twenty-three (23) year sentence, and that sentence will be a hundred percent (100%) sentence.

It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant contends that the evidence was insufficient to support his conviction for aggravated arson. He further contends that the trial court erred when it denied his motion of a change of venue and when it sentenced him.

## A. Sufficiency

The Defendant asserts that the State failed to prove the requisite *mens* rea required for aggravated arson and, therefore, the evidence is insufficient to support his conviction. In support of this contention, he relies upon Dr. Auble's testimony that he lacked the requisite mental state to "knowingly" commit the crime. Specifically, he contends that the evidence is insufficient to support his aggravated arson conviction based upon the proof that the Defendant lacked the requisite mental state to "knowingly" commit the crime as testified to by the defense expert Dr. Auble. The State responds that there was direct evidence on the security camera footage of the Defendant lighting a fire inside the courthouse. The State further responds that Dr. Auble's expert opinion did not

6

conclusively establish that the Defendant lacked the mental capacity to be aware of his conduct. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus[,] the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

Relevant to this case, a person can be found guilty of arson when that person knowingly damages any structure by means of a fire or explosion. T.C.A. § 39-14-301. A person commits aggravated arson who commits arson as defined in § 39-14-301 when one or more persons are present therein. T.C.A. § 39-14-302. Arson does not "require that a defendant act with an awareness that setting a fire or creating an explosion is reasonably certain to cause damage to a structure." *State v. Gene Shelton Rucker, Jr.*, No. E2002-02101-CCA-R3-CD, 2004 WL 2827004, at *10 (Tenn. Crim. App., at Knoxville, Dec. 9, 2004), *Tenn. R. App. P. 11 application denied* (Tenn. Mar. 21, 2005). Rather, "the nature of the conduct—creating a fire or explosion—that causes the damage to the structure is consequential and central to the offense." *Id.* Thus, the knowing *mens rea* for arson is satisfied where "the person is aware of the nature of the conduct" or the accompanying circumstances. *See id*.

The evidence presented, viewed in the light most favorable to the State, was that the Defendant entered the courthouse and, after spending some time loitering in the vestibule, set an item or items on fire inside the vestibule's recycling bin. Video recordings show the Defendant's actions, and he later stated to law enforcement that he had put a cigarette out inside the bin. At the time of the fire, multiple people were inside the courthouse, which housed multiple county offices. This is sufficient evidence from which the jury could reasonably conclude that the Defendant was guilty of aggravated arson. As to the Defendant's contention that he lacked the requisite mental state for the crime, Dr. Auble opined to the jury that the Defendant was not aware of his actions because of a drug-induced medical delirium. The jury heard Dr. Auble's testimony and chose to reject that defense as is its province as fact finder. The evidence is sufficient to support the Defendant's conviction, and the Defendant is not entitled to relief on this issue.

### B. Motion for Change of Venue

The Defendant next contends that the trial court erred when it denied his motion for a change of venue because the crime occurred in the same building where the trial was held. He claims that the courthouse was well-known in the community and an "inappropriate" location for the trial because the jurors could not have been expected to sit in fair judgment of the Defendant based on the fact that his crime was committed there.

8

The State responds that the Defendant has made no showing that the jurors were affected by the nature of the crime or exposed to publicity about the crime prior to trial. The State further contends that all of the empaneled jurors affirmed their ability to impartially judge the case irrespective of the location. For these reasons, the State contends that the trial court did not err in denying the motion. We agree with the State.

A trial court may "order a venue change when a fair trial is unlikely because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a). Whether to grant a motion for change of venue is left to the sound discretion of the trial court, and the court's ruling will be reversed on appeal only upon a clear showing of an abuse of that discretion. *State v. Davidson*, 121 S.W.3d 600, 611-12 (Tenn. 2003). A change of venue is not warranted simply because a juror has been exposed to pretrial publicity. *State v. Mann*, 959 S.W.2d 503, 531-32 (Tenn. 1997). For this court to reverse a conviction based on a venue issue, the "defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him." *State v. Evans*, 838 S.W.2d 185, 192 (Tenn. 1992).

In determining whether to grant a change of venue, the trial court should consider the following factors:

> the nature, extent, and timing of pretrial publicity; the nature of the publicity as fair or inflammatory; the particular content of the publicity; the degree to which the publicity complained of has permeated the area from which the venire is drawn; the degree to which the publicity circulated outside the area from which the venire is drawn; the time elapsed from the release of the publicity until the trial; the degree of care exercised in the selection of the jury; the ease or difficulty in selecting the jury; the venire persons' familiarity with the publicity and its effect, if any, upon them as shown through their answers on voir dire; the defendant's utilization of his peremptory challenges; the defendant's utilization of challenges for cause; the participation by police or by prosecution in the release of the publicity; the severity of the offense charged; the absence or presence of threats, demonstrations, or other hostility against the defendant; the size of the area from which the venire is drawn; affidavits, hearsay, or opinion testimony of witnesses; and the nature of the verdict returned by the trial jury.

*State v. Sexton*, 368 S.W.3d 371, 387 (Tenn. 2012) (citing *State v. Rogers*, 188 S.W.3d 593, 621-22 (appendix) (citing *State v. Hoover*, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979))).

The record demonstrates the trial court did not abuse its discretion in denying the Defendant's motion. The trial court considered the host of factors relevant to a change of venue determination, and it noted that there was no evidence that any of the jurors were

9

affected by the location of the crime and the trial both being in the Dekalb County courthouse. It also noted that the jurors had not indicated much or any awareness of publicity about the facts of the case that would have come out at the time of the incident. The Defendant has provided nothing more than mere speculation and certainly did not demonstrate that the jurors who actually sat on the jury were biased or prejudiced against him because of the connection between the crime's location and the trial venue. Accordingly, the Defendant is not entitled to relief on this claim.

## C. Sentencing

The Defendant contends that the trial court erred when it sentenced him to serve a twenty-three-year sentence rather than the minimum sentence of fifteen years. He argues that the trial court's heavy weight placed on his prior criminal history did not account for the fact that his prior convictions were non-violent and only drug related. He contends that this, his first conviction involving violence or threat of harm to others, should have been a shorter sentence. The State responds that the trial court properly enhanced the Defendant's sentence within its discretion based on the applicable enhancing factors. We agree with the State.

On appeal, a defendant bears the burden of establishing that his sentence is improper. T.C.A. § 40-35-401, *Sentencing Comm'n Cmts*; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Appellate review of sentences is under the abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this Court must presume the sentence to be reasonable. *Bise*, at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by

the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The trial court stated that it had considered the evidence at trial, the parties' arguments as to sentencing, the presentence report, and the principles of sentencing. The trial court applied two enhancement factors to the Defendant's sentence, factor (1), that he had a history of prior criminal convictions. T.C.A. § 40-35-114(1). The trial court applied enhancement factor (6), that the amount of damage to the property was particularly great, based on the sustained damage to the courthouse costing $120,000. T.C.A. § 40-35-114(6). The trial court also considered applicable mitigating factors, noting the evidence of his health issues supported mitigation. Based upon the applicable enhancement and mitigating factors, the trial court ordered a twenty-three-year sentence, two years less than the maximum sentence within the range.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2019).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. *See* T.C.A. § 40-35-114; *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a

11

manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

We conclude that the trial court properly sentenced the Defendant. The trial court considered the relevant principles and sentenced the Defendant to a within range sentence. Based on the evidence at trial and the Defendant's criminal history provided in the presentence report, the sentence imposed was not excessive, and the trial court did not abuse its discretion. Accordingly, we conclude that the Defendant is not entitled to relief as to this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE